**James R. STEWART, Petitioner,**

v.

**DEPARTMENT OF THE ARMY, Respondent.**

No. 04–3025.

United States Court of Appeals, Federal Circuit.

DECIDED: June 22, 2004.

Phyllis Jo Baunach, Principal Attorney, William F. Ryan, David M. Cohen, of Counsel, Washington, DC, for Respondent.

Peter B. Broida, Principal Attorney, Arlington, VA, for Petitioner.

Before CLEVENGER, RADER, and SCHALL, Circuit Judges.

CLEVENGER, Circuit Judge.

James R. Stewart seeks review of the final decision of the Merit Systems Protection Board ("Board") denying his petition for enforcement of a settlement agreement he entered into with his employer, the Department of the Army ("agency"). *Stewart v. Dep't of the Army*, No. DC0752000696–C–1, 95 M.S.P.R. 297 (Sept. 16, 2003). For the reasons set forth below, we *vacate* the final decision of the

Board and *remand* the case to the Board for further proceedings as herein specified.

## I

Effective July 2, 2000, the agency demoted Mr. Stewart from his GS–15 position to a GS–11 position. Mr. Stewart appealed that adverse action to the Board. On November 6, 2000, Mr. Stewart and the agency settled their differences with a Negotiated Settlement Agreement ("settlement agreement" or "agreement"), which simply provided for the permanent demotion to be replaced with a 90–day suspension, made effective July 2, 2000, the very day upon which the agency's original demotion had been ordered. Mr. Stewart agreed in paragraph 4a of the settlement agreement to be "responsible for the payment of any monies owed as a result of these personnel actions." Paragraph 3 of the settlement agreement cataloged the precise consideration that Mr. Stewart gave to induce the agency to enter the settlement agreement. That consideration did not provide for the payment of any money to the agency.

The agency took the view that Mr. Stewart had agreed to a complete suspension of all pay for the 90 days following July 2, 2000, even though he served those days to the benefit of the government at the GS–11 level, and received GS–11 pay for those days. So the government took action to recoup all of Mr. Stewart's GS–11 pay earned during the 90–day suspension.

## II

Mr. Stewart was discomforted by the agency's reduction of his pay packet, in the amount of $309.70 per month, to recoup his 90 days of GS–11 pay. He complained, but was told that the terms of the settlement agreement required him to disgorge the pay he earned while serving in suspended status as a GS–11. When the agency re-

fused to back off of its position, Mr. Stewart returned to the Board with a petition to enforce the settlement agreement according to what Mr. Stewart understood to be its correct terms: namely a 90–day suspension from his GS–15 status while serving in a GS–11 position.

The agency held firm in the enforcement proceeding, alleging that it was entitled to demand that Mr. Stewart work for nothing for 90 days as a GS–11 in order to effect a 90–day suspension from GS–15 status. The Board agreed with the agency, thinking that the "any monies owed" clause in the contract validated the position of the agency. Mr. Stewart timely sought review in this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(9) (2000).

### III

The sole issue before us is one of contract interpretation, a matter of law that we consider without deference to the judgment of the Board. *Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988). The question is what is meant by the contract terms "change the penalty ... from a demotion to a 90 day suspension, effective 2 July 2000."

Mr. Stewart challenges as erroneous the Board's interpretation of his settlement agreement. We agree with Mr. Stewart that the Board misinterpreted the settlement agreement. The agency originally proposed and enforced a permanent demotion of Mr. Stewart from GS–15 to GS–11, contemplating that he would continue without break in government service, just at the reduced GS level. The settlement agreement, arrived at more than 90 days after Mr. Stewart had been demoted, but expressly dating his 90–day suspension to run from July 2, 2000, can only be interpreted to mean that Mr. Stewart was to continue to work, but in suspension from his GS–15 status for 90 days. Accordingly,

the correct interpretation of the agreement is that Mr. Stewart was to serve a 90–day suspension from the position of GS–15. He in fact has served that suspension, since for the 90 days in question he served as and was paid for GS–11 status. He was denied the difference in pay between a GS–11 and a GS–15 for the specified 90 days. Under this correct interpretation of the settlement agreement, there are no "monies owed" by Mr. Stewart to the government. For that reason, it was error for the Board to countenance the agency's reduction in Mr. Stewart's pay to recoup for the government the amount of the GS–11 pay that Mr. Stewart earned during his 90–day suspension.

Under the correct interpretation of the settlement agreement, the parties have fulfilled their agreement and the agency has erred in seeking recoupment of pay from Mr. Stewart on the theory that his GS–11 pay is "monies owed" to the government under section 4a of the settlement agreement. Since Mr. Stewart served his 90–day suspension from the GS–15 rank and pay, and since that was the deal to which he agreed, there is no basis upon which to assert that there is money due from him to the agency on account of the demotion/suspension action taken by the agency. In fact, the agency conceded before the Board that the law prevents the agency from accepting voluntary services. This is precisely what the agency sought to accomplish by requiring Mr. Stewart to come to work for 90 days in a GS–11 status while also requiring him to forego his GS–11 pay for those days. The construction of the settlement agreement espoused by the agency and adopted by the Board would require us to ignore this bedrock principle of federal employment law: employees do not work for free.

At oral argument in this court, the agency asserted that the GS–11 pay earned

during the 90–day suspension was actually consideration Mr. Stewart paid, under the "any monies owed" clause, to the agency for releasing him from his permanent demotion. The notion that Mr. Stewart tendered as consideration for the agency's agreement all of his GS–11 pay is incorrect. The contract has a separate section dealing with the consideration given by Mr. Stewart, and that section does not refer to money he would owe the agency.

We may upset the final decision of the Board if we determine that it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 7703(c) (2000). As noted above, this appeal concerns a question of law, on which we conclude that the Board erred. Under a correct reading of the settlement agreement, there are no monies due from Mr. Stewart to the agency.

We therefore remand the case to the Board, with instructions that it reconsider the petition for enforcement of the settlement agreement, issue the correct interpretation of the settlement agreement as stated in this opinion, and instruct the agency to repay Mr. Stewart in full for the monies it has wrongly withheld from him in its illegal attempt to recoup 90 days of his GS–11 pay.

## COSTS

No costs.